**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO.  5:24-CR-17(1)-RWS-JBB |
| | § | |
| JONATHAN FRANK SANCHEZ | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court are the Government's objections to the Magistrate Judge's Report and Recommendation. Docket No. 44. The above-captioned criminal action was referred to United States Magistrate Judge J. Boone Baxter pursuant to 28 U.S.C. § 636. On November 20, 2024, the Magistrate Judge issued a Report and Recommendation (Docket No. 36) ("R&R") recommending Defendant's Motion to Suppress (Docket No. 26) be granted. The Government filed objections to the R&R and Defendant filed a response. Docket Nos. 44, 45. Neither party has requested a hearing on the objections. The Court conducts a *de novo* review of the Magistrate Judge's findings and conclusions that the Government objected to. *See* 28 U.S.C. § 636(b)(1)(C).

## BACKGROUND

Defendant Jonathan Frank Sanchez is charged with felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(9). Docket No. 1. The charges result from a traffic stop and search of Sanchez's vehicle.

On the afternoon of April 2, 2024, Officer Esteban Gonzalez was on routine patrol. R&R at 4. Officer Gonzalez has worked for the Nash, Texas Police Department ("NPD") for

approximately a year, routinely performed traffic stops with NPD, and completed hundreds of hours of intensive training that included conducting traffic stops. *Id.* at 6; Docket No. 44 at 5–6. At approximately 5:10 p.m., Officer Gonzalez stopped Sanchez's vehicle for having an expired registration. R&R at 6. Officer Gonzalez had previously observed the same car coming and going from two mobile home parks that, according to him, are known to have high crime activity. *Id.* at 6–7.

Upon being pulled over, Sanchez provided Officer Gonzalez his license and insurance. *Id.* at 7–9. Officer Gonzalez observed that Sanchez was exhibiting various nervous behaviors. *Id.* at 8–12. Approximately four minutes into the traffic stop, Officer Gonzalez requested permission to search Sanchez's vehicle, which Sanchez denied. *Id.* at 10. Officer Gonzalez then informed Sanchez that he would be calling a K-9 unit to conduct a "free-air sniff" around the vehicle. *Id.*

While waiting for the K-9 unit to arrive, Officer Gonzalez continued writing the citation for the expired registration. *Id.* at 11. Approximately eleven minutes into the traffic stop at 5:21 p.m., Officer Gonzalez set the warning citation down on his passenger seat. *Id.* At that point, the only information he needed to complete the ticket was Sanchez's telephone number and social security number. *Id.* Although he had planned to get that information from Sanchez when he got out of the car, Officer Gonzalez instead frisked Sanchez and asked him other unrelated questions. *Id.* at 11–13.

The K-9 unit arrived at 5:30 p.m., approximately twenty minutes from the initiation of the traffic stop. *Id.* at 4, 13. Following the K-9's positive alert on the passenger side of the vehicle, officers searched the vehicle and found items consistent with the use of illegal narcotics, a bag containing a substance that later tested positive for methamphetamine, and a purple handgun that

Sanchez said belonged to his girlfriend. *Id.* at 14–15. Sanchez moves to suppress all evidence associated with this stop. *See* Docket No. 26.

In Sanchez's motion, he argues that although Officer Gonzalez was justified in the initial stop, the detention eventually became unreasonable because it lasted longer than necessary to effectuate the purpose of the stop (i.e., issuing a warning citation for the expired registration sticker). *Id.* at 8. The Government contends Officer Gonzalez had a lawful basis to extend the stop due to his reasonable suspicion that a crime had been or was about to be committed. Docket No. 30 at 8–9. The Government asserts Officer Gonzalez's suspicion was based on Sanchez's nervousness throughout the traffic stop and recent presence in two mobile home parks that are known locations for drug activity. *Id.*; R&R at 6–7.

## I.      November 20, 2024 Report and Recommendation

The Magistrate Judge conducted a hearing on Sanchez's motion to suppress on October 28, 2024. *See* Docket No. 34. On November 20, 2024, the Magistrate Judge entered a 46-page R&R (Docket No. 36) recommending the motion be granted.

As explained in the R&R, to determine whether Officer Gonzalez had reasonable suspicion to prolong the traffic stop, the Court could only rely on the facts available to Officer Gonzalez at the so-called "*Rodriguez* moment." R&R at 1. In this case, the Magistrate Judge determined that the *Rodriguez* moment—when activities involving the mission of issuing a traffic citation and attending to related safety concerns were completed or reasonably should have been completed— was eleven minutes into the traffic stop. *Id.* (citing *United States v. Green*, 897 F.3d 173, 179 (3d Cir. 2018) (discussing *Rodriguez v. United States*, 575 U.S. 348 (2015))). Detaining Sanchez beyond the initial eleven minutes of the stop was not permitted unless a reasonable suspicion of additional criminal activity arose during those eleven minutes. *Id.* (citing *United States v. Spears*, 636 F. App'x 893, 902 (5th Cir. 2016)).

The Magistrate Judge could see "no objectively logical path of deduction that le[d] to reasonable suspicion of criminal activity" at the *Rodriguez* moment. *Id*. at 2. In coming to this conclusion, the Magistrate Judge considered "the totality of the circumstances that existed both before the stop and during the initial eleven minutes of the stop—Sanchez's nervousness and previous presence in high crime areas." *Id*. at 1–2 (citing *United States v. Monsivais*, 848 F.3d 353, 363 (5th Cir. 2017)). Because Officer Gonzalez did not have reasonable suspicion that a crime other than the traffic infraction had been, was being, or was about to be committed, the Magistrate Judge concluded that Officer Gonzalez could not prolong the traffic stop to wait for the K-9 unit to arrive and perform the free-air sniff. *Id.* at 2. The Magistrate Judge therefore found that the seizure violated Sanchez's rights under the Fourth Amendment, and recommended that the evidence obtained therefrom, including the handgun found after the K-9 alerted to the presence of drugs in the car, be suppressed. *Id.*

## II.    The Government's Objections

On December 20, 2024, the Government filed objections to the R&R. Docket No. 44. On January 3, 2025, Sanchez filed a response to the Government's objections. Docket No. 45.

In its objections, the Government asserts the Magistrate Judge failed to properly evaluate the totality of the circumstances. Docket No. 44 at 4. The Government further argues the Magistrate Judge failed to give the appropriate deference to Officer Gonzalez's knowledge of the "nature and nuances" surrounding the type of criminal activity of which he was suspicious and prior experience regarding this criminal activity. *Id.* Thus, according to the Government, the Magistrate Judge erred in his finding as to the second prong of *Terry*—that Officer Gonzalez did not have a reasonable suspicion of additional criminal activity at the *Rodriguez* moment to prolong the traffic stop. *Id.* at 4–5.

## RELEVANT LEGAL STANDARDS

### I.    Standard of Review

The Court must conduct a *de novo* review of all portions of the Magistrate Judge's report that a party has properly objected to. *See* 28 U.S.C. § 636(b)(1)(C) (District Judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). For the unobjected-to portions of the Magistrate Judge's report, however, parties are barred from *de novo* review by the District Judge of the Magistrate Judge's proposed findings, conclusions, and recommendations and, except upon grounds of plain error, from appellate review of the unobjected-to factual findings and legal conclusions accepted and adopted by the District Court. *See Duarte v. City of Lewisville, Texas*, 858 F.3d 348, 352 (5th Cir. 2017); *Arriaga v. Laxminarayan*, Case No. 4:21-CV-00203-RAS, 2021 WL 3287683, at *1 (E.D. Tex. July 31, 2021).

### II.    Substantive Law

The Fourth Amendment prohibits "unreasonable searches and seizures." *Terry v. Ohio*, 392 U.S. 1, 8–9 (1968); *Bailey v. United States*, 568 U.S. 186, 189 (2013). Traffic stops are deemed seizures under the Fourth Amendment. *United States v. Valadez*, 267 F.3d 395, 397 (5th Cir. 2001). The legality of a traffic stop is analyzed under the *Terry* two-part inquiry: (1) "whether stopping the vehicle was initially justified by reasonable suspicion," and (2) "whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop of the vehicle in the first place." *United States v. Spears*, 636 F. App'x 893, 898 (5th Cir. 2016) (discussing *Terry*, 392 U.S. at 1). Therefore, a traffic stop prolonged past the time reasonably required to address the initial traffic violation can violate the Constitution. *Rodriguez*, 575 U.S. at 354.

The tolerable duration of police inquiries in the traffic-stop context "is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *United States v. Pena-Gonzalez*, 618 F. App'x 195, 197–98 (5th Cir. 2015) (citing *Rodriguez*, 575 U.S. at 358). A traffic stop typically involves an officer "examin[ing] the driver's license and vehicle registration . . . [and] ask[ing] about the purpose and itinerary of the driver's trip." *Id.* at 198 (citing *United States v. Fishel*, 467 F.3d 855, 857 (5th Cir. 2006)). The use of a canine to sniff for narcotics around a vehicle, however, "is not an ordinary incident of a traffic stop." *Rodriguez*, 575 U.S. at 356–357 (explaining that a dog sniff is not properly characterized as part of an officer's traffic mission because it lacks the same close connection to roadway safety as the typical inquiries). The "[a]uthority for the seizure . . . ends" once "the tasks tied to the traffic infraction are—or reasonably should [be]—completed." *Pena-Gonzalez*, 618 F. App'x at 198 (quoting *Rodriguez*, 575 U.S. at 354).

The "*Rodriguez* moment" is the instant that a stop ceases to be related to the traffic stop's mission. *United States v. Chance*, No. 22-3191, 2024 WL 1110383, at *3 (3d Cir. Mar. 14, 2024) (citing *United States v. Green*, 897 F.3d 173, 179 (3d Cir. 2018)). From that point on, the traffic stop can only be extended if there was reasonable suspicion of additional criminal activity.[1] *United States v. Frazier*, 30 F.4th 1165, 1179 (10th Cir. 2022) ("like the Third Circuit, we read *Rodriguez* as holding that when reasonable suspicion is lacking at the '*Rodriguez* moment,' seizure of the individual remains illegal from that point forward"); *Pena-Gonzalez*, 618 F. App'x at 198 (citing *Rodriguez*, 575 U.S. at 354).

---

[1] Traffic stops can also be extended if the detainee gives consent, but here, Sanchez did not give consent to search his vehicle. *United States v. Jenson*, 462 F.3d 399, 406 (5th Cir. 2006) ("Consent to search may, but does not necessarily, dissipate the taint of a [F]ourth [A]mendment violation." (citations omitted)); R&R at 10.

Reasonable suspicion exists if the police officer can point to specific and articulable facts indicating that criminal activity is occurring or is about to occur. *Pena-Gonzalez*, 618 F. App'x at 198 (citing *United States v. Alvarado–Zarza*, 782 F.3d 246, 249 (5th Cir. 2015) (citing *Terry*, 392 U.S. at 88)). Reasonable suspicion must be based on more than an officer's hunch or sense that a detainee appears to have something to hide. *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *United States v. Gonzalez*, No. 23-10963, 2024 WL 3338595, at *3 (5th Cir. July 9, 2024). The "level of suspicion the standard requires is 'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause." *Pena-Gonzalez*, 618 F. App'x at 198 (quoting *Navarette v. California*, 572 U.S. 393 (2014)).

Courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266 (2002). The reasonable suspicion analysis "is necessarily fact-specific, and factors which by themselves may appear innocent, may in the aggregate rise to the level of reasonable suspicion." *United States v. Spears*, 636 F. App'x 893, 898 (5th Cir. 2016) (citations omitted) (citing *United States v. Ibarra–Sanchez*, 199 F.3d 753, 759 (5th Cir. 1999)). Courts must "pay heed to the Supreme Court's admonition not to treat each factor in isolation." *Id.* (citations omitted) (citing *United States v. Macias*, 658 F.3d 509, 520 (5th Cir. 2011)). However, it is possible that certain types of factors can fall short. For example, "something more" is required than just a detainee's nervousness or previous presence in high-crime areas. *United States v. Monsivais*, 848 F.3d 353, 359 (5th Cir. 2017) ("[W]e have never held that nervousness alone is sufficient . . . .") (citations omitted); *United States v. Alvarez*, 40 F.4th 339, 351 (5th Cir. 2022) ("[A]n individual's presence in an area of expected criminal activity, standing alone, is not enough . . . .") (citations omitted).

When assessing the totality of the circumstances, courts recognize that officers are allowed to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person. *Arvizu*, 534 U.S. at 273. Courts should err on the side of deferring to the knowledge and experiences of a trained law enforcement officer's ability to distinguish between innocent and suspicious activities. *United States v. Lee*, No. 1:06-CR-125(9), 2007 WL 1567098, at *8 (E.D. Tex. May 29, 2007). At the same time, "Fourth Amendment activities are to be judged in the light of objectively justifiable factors, not a law enforcement officer's subjective motives." *Id.* Where testimony conflicts with video evidence, the Court must view "facts in the light depicted by the videotape." *United States v. Wright*, 57 F.4th 524, 530 (5th Cir. 2023) ("An electronic recording will many times produce a more reliable rendition . . . than . . . the unaided memory of a police agent.") (citations omitted). Even while giving proper deference to an officer's knowledge and experience, it is still possible for courts to find that an officer had no reasonable suspicion to warrant an extended detention. *See United States v. Monsivais*, 848 F.3d 353, 358, 363 (5th Cir. 2017) (referencing that the officer had made more than 100 traffic stops in his career, but ultimately finding no reasonable suspicion that justified an extended detention); *United States v. Jenson*, 462 F.3d 399, 405, 408 (5th Cir. 2006) (according great respect to the officer's testimony as a trained law enforcement officer, but finding no reasonable suspicion to justify prolonging the search).

The exclusionary rule, a judicially created deterrence measure, provides that "evidence obtained by an unreasonable search or seizure generally may not be used as evidence of guilt at trial." *Alvarez*, 40 F.4th at 345 (citing *Mapp v. Ohio*, 367 U.S. 643, 655 (1961); also citing *Weeks v. United States*, 232 U.S. 383, 393 (1914)). Where there is no warrant, the government bears the burden of establishing by a preponderance of the evidence that the challenged search and/or seizure

was valid. *United States v. Taylor*, No. 9:23-CR-00007-MAC, 2023 WL 7392039, at *2 (E.D. Tex. Oct. 19, 2023), *report and recommendation adopted*, 2023 WL 7388901 (E.D. Tex. Nov. 7, 2023) (citing *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005)).

## ANALYSIS

The Government's objections revolve around whether Officer Gonzalez had reasonable suspicion of additional criminal activity to justify Sanchez's continued detention after the purpose of the initial traffic stop ended. If, up to the *Rodriguez* moment, Officer Gonzalez had developed reasonable suspicion to investigate Sanchez for the possession of narcotics, then he was permitted to detain Sanchez for the time reasonably necessary to investigate that crime, including time reasonably necessary to perform a sweep of the car with a canine unit. *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004) (en banc) (explaining that under *Terry*'s second prong, a "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges."); *see United States v. Smith*, 355 F. Supp. 3d 544, 550 (N.D. Miss. 2018), *aff'd*, 952 F.3d 642 (5th Cir. 2020). The Magistrate Judge found that Officer Gonzalez did not have, at the eleven-minute mark or so-called *Rodriguez* moment, reasonable suspicion that Sanchez was engaged in criminal conduct that justified his continued detention. R&R at 1–2, 23 & n. 10.

As an initial matter, the Government does not object to the Magistrate Judge's determination of the *Rodriguez* moment as occurring (at the latest) at approximately 5:21 p.m., eleven minutes into the traffic stop when activities involving the mission of issuing a traffic citation and attending to related safety concerns were completed or reasonably should have been completed. R&R at 1, 20; *see, e.g.*, Docket No. 44 at 10–11 (referencing the *Rodriguez* moment without any objections).

Nor does the Government challenge the Magistrate Judge's reliance on only two factors to determine whether there was reasonable suspicion: (1) Officer Gonzalez had seen Sanchez's car in and out of "high crime" areas in the past months and had observed Sanchez coming out of "one of the [high crime] trailer places" earlier on the date of the stop; and (2) Officer Gonzalez observed throughout the first eleven minutes that Sanchez's nervousness (*e.g.*, Sanchez's nervous look and nervous grin, fast-talking, looking around, oversharing, body language, being hesitant, and fidgeting) did not lessen after Sanchez was advised he would be receiving a warning. R&R at 24; *see, e.g.*, Docket No. 44 at 11 (referencing only the two factors). Because there are no objections to the *Rodriguez* moment or to the evidence the Court considered in determining that Officer Gonzalez did not have reasonable suspicion to prolong the traffic stop for a K-9 to arrive and perform a free-air sniff, and because the Court finds no clear error in those determinations, the Court adopts those findings of the Magistrate Judge.

In its objections, the Government argues the Court should decline to adopt the R&R because, in analyzing whether there was additional reasonable suspicion to extend the traffic stop, the Magistrate Judge (1) failed to give appropriate deference to Officer Gonzalez's knowledge of the nature and nuances surrounding the type of criminal activity of which he was suspicious and prior experience regarding this criminal activity; and (2) failed to properly evaluate the totality of the circumstances. Docket No. 44 at 4. The Court addresses each objection below.

## I.    Whether the Magistrate Judge Failed to Give Appropriate Deference to Officer Gonzalez's Knowledge and Experience

The Government contends the Magistrate Judge failed to give Officer Gonzalez the proper deference. Docket No. 44 at 4. In particular, the Government focuses on Officer Gonzalez's observations of Sanchez's initial demeanor and argues these are specific signs of nervousness that Officer Gonzalez was trained to look for during traffic stops. *Id.* at 5–8.

The Government's objections retread the same ground as the Magistrate Judge's R&R. The Magistrate Judge specifically noted in the R&R that courts must be careful when conducting a *Terry* analysis to allow "officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Id*. at 35 (quoting *Jenson*, 462 F.3d at 404). Accordingly, the Magistrate Judge considered approximately ten pages of evidence in the R&R before reaching his recommendation. R&R at 5–16. The Magistrate Judge considered evidence regarding Officer Gonzalez's experience and training, including the specific signs Officer Gonzalez was trained to look for when conducting traffic stops (such as being "overly friendly" and giving more information than necessary to answer questions). *Id.* at 6 (citing Hearing Transcript ("Tr.") at 51:12-52:7); *see id.* at 5–16. The Magistrate Judge also evaluated the evidence from Officer Gonzalez's incident report, which described Sanchez as "appear[ing] to have a nervous look while talking as if he was slightly frightened," as "appear[ing] to have a nervous grin," and as someone who was "talking a little fast as if he was trying to get the traffic stop over with as fast as he could." *Id.* at 8 (citing Def. Ex. 1 (US_Sanchez_000000010)).

Over Sanchez's objection (*id*. at 30), the Magistrate Judge also considered the additional details as to Sanchez's nervousness that Officer Gonzalez provided during his hearing testimony. *Id.* at 8 (citing Tr. at 27:12–21 (Sanchez's eyebrows "were frowned"; he was looking elsewhere; and he was "talking a little bit fast"), 103:19–104:2 (Officer Gonzalez observed other things throughout the detention that were not explicitly included within his report—changes in demeanor, heavy breathing, oversharing, body language, looking around, being hesitant, fidgeting)). According to Officer Gonzalez, after Sanchez got out of the vehicle, Sanchez walked to the front of the patrol vehicle and put his hands behind his back as if he was prepared to be handcuffed,

which Officer Gonzalez viewed as "related to [Sanchez's] nervous behavior." *Id*. (citing Tr. at 28:4–23). The Magistrate Judge further credited Officer Gonzalez's testimony that he had reasonable suspicion based on Sanchez's nervousness from the moment that Officer Gonzalez had made contact with him, "following up to the gestures he was doing walking to the vehicle." *Id*. at 8–9 (citing Tr. at 75:9–14).

After considering the record and instructive case law, the Magistrate Judge found that Officer Gonzalez's observations about Sanchez's nervousness and demeanor failed to rise to reasonable suspicion standards, even when coupled with Sanchez's previous presence in the mobile home parks. R&R at 30–36. The Magistrate Judge specifically found that in light of the video and factual similarity to *Jenson* and *Monsivais*, there was no "particularized and objective" basis to suspect legal wrongdoing from Sanchez's nervousness. *Id.* at 35–36; Docket No. 45 at 5. Indeed, the body-camera footage did not show that the level of Sanchez's nervousness was disproportionate for a traffic stop, especially with *Jenson* and *Monsivais* permitting some level of nervousness. *Jenson*, 462 F.3d at 402–403, 406 (no reasonable suspicion even with defendant's excessive talking); *Monsivais*, 848 F.3d at 358–359, 363 (no reasonable suspicion even with defendant's jittery demeanor and uncomfortable posture).

The fact that the Magistrate Judge reaches a different conclusion after fully considering Officer Gonzalez's testimony, evidence, and experience, in light of the applicable case law, does not mean appropriate deference was not given. *See Monsivais*, 848 F.3d at 358, 363 (5th Cir. 2017) (referencing officer's experience while still finding no reasonable suspicion); *Jenson*, 462 F.3d at 405 (same). Upon *de novo* review, the Court agrees with the Magistrate Judge's conclusions. The Court addresses specific objections below regarding certain moments the Government asserts deserve greater weight.

**A.      Whether the Magistrate Judge Failed to Give Sufficient Weight to Sanchez Assuming Certain Posture**

The Government specifically asserts the Magistrate Judge "incorrectly gave little weight to Sanchez assuming the posture of someone placed under arrest and instead compared it to someone putting their hands in their pockets." Docket No. 44 at 8. The Magistrate Judge did so because the Government's concern with Sanchez's momentary posture resembles the situation in *Monsivais*, 848 F.3d at 358–59, wherein the Fifth Circuit rejected the Government's argument that "Monsivais's jittery demeanor and habit during questioning of putting his hands in his pockets" contributed to the officer's reasonable suspicion. R&R at 31–32. The Government does not specifically address the *Monsivais* case in its objections. It only argues that Sanchez's "subconscious expression of guilt" of momentarily holding his hands behind his back "is entirely dissimilar to an individual placing hands in pockets and is an example of [Officer] Gonzalez's knowledge of the nature and nuances of criminal activity that he has observed in his experience." Docket No. 44 at 8–9.

The Government fails to persuade the Court that Sanchez's momentary posture was "entirely dissimilar" to the defendant in *Monsivais* placing his hands in his pockets. Upon the Court's review of the body-camera footage, it is not believable that Sanchez's posture, which seemed plausible in the context of Sanchez leaning against his car, indicated that he "already knew he was going to jail." Tr. at 28:11–12; *Wright*, 57 F.4th at 530 (the court must view the "facts in the light depicted by the videotape") (citations omitted). It is more likely that the posture was a brief nervous reaction, like in *Monsivais*. *See* Tr. at 28:21–23 (Officer Gonzalez testifying that the posture was "related to [Sanchez's] nervous behavior).

"Nervousness per se carries with it no readily discernible connection to criminal activity". *Monsivais*, 848 F.3d at 359. "Nervousness is an entirely natural reaction to police presence." *Id.*

(citations omitted). In the Court's view, Sanchez's nervousness, temporarily exhibited through a momentary posture with his hands, does not suggest that he is linked to drug activity that would warrant a canine sniff. Even while giving deference to Officer Gonzalez's knowledge and experience, there still must be a "particularized and objective basis" for suspecting legal wrongdoing that is not based on a mere hunch. *See United States v. Sokolow*, 490 U.S. 1, 7 (1989).

**B.    Whether the Magistrate Judge Erroneously Dismissed Sanchez's Non-Responsive Answers and Oversharing**

In its objections, the Government also claims that the Magistrate Judge erroneously dismissed Sanchez's repeated non-responsive answers and oversharing as the type of nervousness that is a natural reaction to police presence. Docket No. 44 at 9.

In *Monsivais*, the Fifth Circuit explained that there are "sound and compelling reasons" for a court's skepticism of the probative value of an individual's nervousness in assessing whether reasonable suspicion of criminal activity exists because nervousness is an "entirely natural reaction to police presence." *Monsivais*, 848 F.3d. at 359 (quoting *United States v. McKoy*, 428 F.3d 38, 40 (1st Cir. 2005)). However, the Fifth Circuit did note that the Supreme Court has said that "nervous, *evasive* behavior is a pertinent factor in determining reasonable suspicion." *Id.* (emphasis in original)). The Fifth Circuit proceeded to find that there was nothing evasive about Monsivais's behavior, and his nervousness was an "entirely natural reaction to police presence." *Id.* (drawing a line between evasive behavior that might rouse suspicion, and a normal kind of nervousness). The Fifth Circuit then held the government failed to satisfy its burden under *Terry* of pointing to specific and articulable facts warranting reasonable suspicion that Monsivais had committed, was committing, or was about to commit a criminal act prior to his seizure. *Id.* at 363.

According to the Magistrate Judge, Sanchez's non-responsive answers and oversharing resembled the *Monsivais* case and were an "entirely natural reaction to police presence." R&R at

32–33 (quoting *Monsivais*, 848 F.3d. at 359). Giving ample consideration to Officer Gonzalez's experience, training, and hearing testimony, the Magistrate Judge found there was nothing evasive about Sanchez's behavior. R&R at 32–33 (stating that despite mentioning some hesitation on Sanchez's part, Officer Gonzalez's overall testimony was that Sanchez was "overly friendly" and provided more information than what was necessary, which was interpreted by Officer Gonzalez as a sign of nervousness rather than evasiveness). The Government does not address the Magistrate Judge's finding that Sanchez was not evasive in its objections. Upon *de novo* review, the Court agrees with the Magistrate Judge that Sanchez's behavior was not evasive, and therefore, his nervousness was an "entirely natural reaction to police presence." *Monsivais*, 848 F.3d. at 359.

### C.     Whether the Magistrate Judge Failed to Consider Sanchez's Other Indications of Nervousness and Their Progression

The Government also attempts, without success, to distinguish the facts in this case from those in *Jenson*, which the Magistrate Judge considered in determining whether Sanchez's progressive nervousness during the stop was sufficient to establish reasonable suspicion. R&R at 33–34. In that case, the driver, though calm and cooperative at the time of the initial stop, "became excessively talkative, answering questions that he was not asked, which [the officer] surmised to mean he was nervous." *Jenson*, 462 F.3d at 402. The driver continued to exhibit this behavior even after being issued the warning, which the officer found odd. *Id*. at 402–03. Despite considering the driver's signs of nervousness, delay in pulling over, and the officer's testimony, the court in *Jenson* held the government had not shown reasonable suspicion to prolong the traffic stop. *Id.* at 405–06.

The Government acknowledges that this case also involves excessive talking and answering questions that were not asked, which did not warrant reasonable suspicion in *Jenson*. *See* Docket No. 44 at 9. However, the Government argues in its objections that Sanchez also exhibited "many other indicators of nervousness throughout the stop"—indicators which were not

addressed in *Jenson. Id.* Specifically, the Government relies on Officer Gonzalez's observations of Sanchez's progression of nervousness and changes in demeanor while Officer Gonzalez was filling out the warning form. *Id.* at 7–8.

The Magistrate Judge addressed those other indicators and the progression of nervousness at length in the R&R, including Officer Gonzalez's observations of Sanchez's behavior during the seven minutes while Officer Gonzalez was sitting in the patrol vehicle calling for a K-9 unit and writing the warning citation. R&R at 35 (citing Tr. at 34:5–7, 71:7–8 (Officer Gonzalez's testimony that Sanchez "was still showing signs of nervousness, moving around, looking around, and speaking to somebody on the phone at that time" and that Sanchez was "fidgeting when I was in the vehicle observing him")). The Magistrate Judge noted the body-camera footage does not capture any of those behaviors during the approximately seven minutes while Officer Gonzalez was inside the patrol vehicle because Sanchez was largely out of view. R&R at 35. Although the Magistrate Judge credited Officer Gonzalez's assertions about what happened while Sanchez was largely out of view, *McKinney*, 980 F.3d at 495–96, the Magistrate Judge explained that Officer Gonzalez's description of Sanchez's behavior during that time, just like Sanchez's behavior while on the video, "is not the sort that typically supports a finding of reasonable suspicion." R&R at 35 (citing *Monsivais*, 848 F.3d at 359).

Contrary to the Government's argument (Docket No. 44 at 8), the Magistrate Judge did not suggest that Officer Gonzalez's testimony regarding Sanchez's progressive nervousness is insignificant. Instead, the Magistrate Judge held that the level of Sanchez's nervousness during the first eleven minutes of the traffic stop, in light of the video evidence and instructive case law, cannot appreciably contribute to a "particularized and objective" basis for suspected legal wrongdoing. R&R at 35–36. The Magistrate Judge found that nothing in the body-camera footage

shows Sanchez being "excessively nervous" during the first eleven minutes of the detention. *Id.* at 30–31. Whereas Officer Gonzalez characterized various aspects of Sanchez's communication as non-responsive and irrelevant, the Magistrate Judge found much of the exchange was within the context of the conversation as a whole. *Id*. at 31 (citing Tr. at 79:3–7). Upon performing a *de novo* review and considering Officer's Gonzalez's experience and testimony, especially with respect to when Sanchez is out of view in the body-camera footage, the Court agrees with the Magistrate Judge's findings that Sanchez's nervousness does not rise to the level of reasonable suspicion.

## II.    Whether the Magistrate Judge Failed to Consider the Totality of the Circumstances

The Government also objects to the Magistrate Judge's failure to consider the totality of the circumstances in determining whether there was reasonable suspicion to prolong the traffic stop. Docket No. 44 at 4. The Government asserts that the Magistrate Judge did not properly consider Officer Gonzalez's assessment of Sanchez's presence in high crime areas, and did not evaluate that factor together with Sanchez's nervousness. *See id.* at 9–11. Sanchez argues that the Magistrate Judge did consider the totality of the circumstances in a multi-page section that analyzes the combined effect of Sanchez's nervousness and previous presence in high crime areas. Docket No. 45 at 5.

The Magistrate Judge considered the totality of the circumstances in his analysis. In fact, rather than discredit Officer Gonzalez's experience, the Magistrate Judge accepted Officer Gonzalez's characterization of the two mobile home areas in Nash as "high crime" areas. R&R at 36–37. Even with this finding, the Magistrate Judge found there was nothing more beyond Sanchez's mere presence in those areas that gave Officer Gonzalez reasonable, articulable suspicion that Sanchez had been, was, or was about to be engaged in criminal activity.

### A.    Whether the Magistrate Judge Restricted the Analysis of Sanchez's Previous Presence in "High Crime" Areas

The Government specifically objects that the Magistrate Judge did not consider the totality of the circumstances at the *Rodriguez* moment because he restricted his analysis to the time Officer Gonzalez stopped Sanchez for the expired registration sticker. Docket No. 44 at 10. This is incorrect. Though the Magistrate Judge notes that Sanchez was not near the mobile home parks at the time Officer Gonzalez pulled him over, he credits "Officer Gonzalez's testimony that he had previously seen Sanchez going in and out of two 'high-crime areas.' " R&R at 43. Indeed, the Magistrate Judge considers Sanchez's previous presence in the mobile home parks with other factors at multiple points. *See, e.g.*, *id.* at 44. Ultimately, the Magistrate Judge found this information insufficient to justify a reasonable suspicion of additional criminal activity because this was the sole piece of evidence the Government offered to show Sanchez's proximity to criminal activity. *See id.* at 38–43.

The Magistrate Judge relied on *United States v. Alvarez*, 40 F.4th 339 (5th Cir. 2022), which explained that "[s]omething more is needed—some observed fact beyond the person's mere presence that gives an officer 'reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity.' " R&R at 29–30 (quoting *Alvarez*, 40 F.4th at 350 (quoting *United States v. Vickers*, 540 F.3d 356, 361 (5th Cir. 2008))). That "something more" was lacking in *Alvarez* when an officer detained Alvarez for being a "Hispanic male who had once ridden a bicycle with large handlebars in a general area" known for gang activity, and the Magistrate Judge held "it is lacking here." 40 F.4th at 348, 350, n.14; R&R at 39.

The Government does not address *Alvarez* in its objections. Nor does it address *United States v. Spears*, 636 F. App'x 899 (5th Cir. 2016) (unpublished), another case relied upon

extensively by the Magistrate Judge.[2] *See* R&R at 39–41. As noted by the Magistrate Judge, *Spears* had facts much more probative than those alleged here and the Fifth Circuit held those facts were insufficient to establish reasonable suspicion. *Id.* at 40–41 (discussing how the defendant in *Spears* was visiting the site of an attempted drug transaction with a confidential informant the day before, was where a suspected drug dealer lived, and had previously been visited by a person very soon before that person sold drugs to an undercover officer—but this was still insufficient to link him with drug activity).

Instead, the Government objects that the Magistrate Judge did not find it inconsistent that there was no evidence confirming Sanchez's story that he was moving from one of the mobile home parks to the other. Docket No. 44 at 10. This is not so. The Magistrate Judge did consider Sanchez's fluid residence status but did not find such information to be suspicious. *See* R&R at 31 (citing Tr. at 38:3–6, 65:19–22, 105:8–13). He instead found the information suggestive of the improper breadth of the Government's analysis. R&R at 44 (finding that Government's analysis would subject "*any* resident or semi-frequent visitor of the mobile home parks, who displays mild-to-moderate level of nervousness" to an extended detention). In the Court's view, the fact that Sanchez might not actually live at the mobile home parks implies that Sanchez was, at best, a visitor. And in the totality of the circumstances, whether Sanchez is a resident or visitor of the mobile home parks does not create any reasonable suspicion of any criminal activity. *See Spears*, 636 F. App'x at 902 ("Minor, insignificant, illusory, or reconcilable inconsistencies in a

---

[2] As noted in the R&R (at 39, n. 19), although the Fifth Circuit in *Reyes* referred to *Spears* as "unpublished and therefore non-precedential," *United States v. Reyes*, 963 F.3d 482, 490 (5th Cir. 2020), shortly thereafter, the Fifth Circuit cited *Spears* with approval. *United States v. McKinney*, 980 F.3d 485, 494 (5th Cir. 2020).

defendant's story are not probative of criminal activity.") (citing *United States v. Davis*, 620 F. App'x 295, 299 (5th Cir. 2015); *Pack*, 612 F.3d at 359–360).

**B.    Whether the Magistrate Judge Failed to Analyze the Reasonable Suspicion Factors Together**

Finally, the Government criticizes the Magistrate Judge's consideration of each factor (nervousness and previous presence in high crime areas) in isolation from each other. Docket No. 44 at 11. Specifically, the Government contends the Magistrate Judge engaged in a "divide-and-conquer" analysis precluded by the Supreme Court's *Terry* decision." *Id.* (citing *United States v. Arvizu*, 534 U.S. 266 (2002)).

The Magistrate Judge did no such thing. Similar to the Fifth Circuit in *Monsivais*, the Magistrate Judge "beg[a]n by assessing the value associated with each factor" and then "evaluate[d] the factors together, in logical relation to one another, in order to discern whether the totality of the circumstances" supports a reasonable suspicion of criminal activity. *Monsivais*, 848 F.3d at 359 (evaluating the three factors—defendant's (1) nervousness, (2) story about where he was going, and (3) behavior when officers offered defendant assistance—separately first, and then all together). After considering "Sanchez's nervous behavior coupled with his previous presence in high crime areas," the Magistrate Judge concluded as follows:

> As evidenced from the caselaw cited throughout this opinion, the totality of the circumstances that existed before the stop and up to the *Rodriguez* moment eleven minutes into the stop (Sanchez's nervous behavior and previous presence in mobile home parks) does not create a reasonable suspicion of additional criminal activity. . . . Other than mild-to-moderate nervousness during a traffic stop and previous presence in two mobile home parks, there was no observed fact to give Officer Gonzalez reasonable, articulable suspicion that Sanchez had been, was, or was about to be engaged in criminal activity apart from the traffic infraction. Without something more, *any* resident or semi-frequent visitor of the mobile home parks, who displays mild-to-moderate level of nervousness as shown in the video during a traffic stop, could be subject to an extended detention.

R&R at 43–44 (internal footnote omitted). Notably, the Government omits any mention of this section where the Magistrate Judge addressed all of the reasonable suspicion factors together.

When considering *de novo* all of the factors and evidence, with deference to Officer Gonzalez's knowledge and experience, in the totality of the circumstances, and in light of the relevant case law, it appears that the Government has "attempted to put an ominous gloss on what appears almost entirely ordinary." *United States v. Hill*, 752 F.3d 1029, 1034 (5th Cir. 2014). As the Magistrate Judge correctly pointed out—under the Government's narrative, any semi-frequent visitor of the mobile home parks who is mildly nervous when pulled over could be subject to an extended detention. *See* R&R at 44. The Government's objections are directed toward analyses that the Magistrate Judge already properly performed, and facts that do not controvert the Magistrate Judge's conclusion that there was no reasonable suspicion to prolong the traffic stop. Therefore, the Government's objections are without merit.

## CONCLUSION

The Court has reviewed the relevant briefing, the evidence, the hearing transcript, and the Report and Recommendation of the Magistrate Judge. The Court has also conducted a careful *de novo* review of the portions of the Magistrate Judge's proposed findings and recommendations to which Plaintiff objected. Upon such review, the Court has determined that the findings and conclusions of the Magistrate Judge are correct, that there are no grounds of plain error, and the Government's objections are without merit. Accordingly, it is

**ORDERED** that the Government's objections (Docket No. 44) are **OVERRULED**. It is further

**ORDERED** that the Report and Recommendation of the Magistrate Judge (Docket No. 36) is **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** that Defendant's Motion to Suppress (Docket No. 26) is **GRANTED**.


**So ORDERED and SIGNED this 22nd day of April, 2025.**


ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE